UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAULINA CABELLO-SETLLE, *individually and
as next friend for KC, a minor*,

                                             Plaintiff,

        -against-

COUNTY OF SULLIVAN, LAURA SCOTT,
JOHN/JANE DOE SUPERVISOR #1, P.O.
ELIZABETH ROSER, and JOHN/JANE DOE
OFFICERS, *the individual defendants sued
individually and in their official capacities*,

                                             Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___09/22/2022___

No. 21 Civ. 7477 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Paulina Cabello-Setlle, individually and as next friend for KC, a minor, brings this

action under 42 U.S.C. § 1983 asserting claims for unreasonable and excessive force, malicious

prosecution, false arrest, false imprisonment, abuse of process, substantive due process, procedural

due process, failure to intervene, and municipal liability under *Monell v. Department of Social

Services of City of New York*, 436 U.S. 658 (1978).

        Specifically, Plaintiff alleges that after filing a formal complaint against Defendant Laura

Scott, a social worker for the County of Sullivan who conducted a welfare check on Plaintiff's

minor child—KC, Scott falsely accused Plaintiff of criminal activity to the New York State Police

("NYSP") and the Sullivan County District Attorney's Office ("County DA's Office") in

retaliation and to cover up her own misconduct. Plaintiff alleges that based on Scott's false

accusations, Defendant NYSP Trooper Roser and other NYSP troopers arrested her and used

excessive force by placing handcuffs tightly on her wrists, and that she was maliciously prosecuted

for about two years before the charges were dismissed under New York Criminal Procedure Law

§ 170.55.[1] She sues Defendants the County of Sullivan, Scott, Scott's John/Jane Doe Supervisor, NYSP Trooper Roser, and the John/Jane Doe NYSP troopers (collectively, "Defendants"), all individual defendants in their official and individual capacities.

Presently pending before the Court is Defendants' respective motions to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 25, 32, and 36.) For the following reasons, the Court GRANTS all of Defendants' motions.

## BACKGROUND

### I.  Factual Background

The following facts are derived from the First Amended Complaint ("FAC," ECF No. 7) and are taken as true and constructed in the light most favorable to Plaintiff at this stage.

On September 10, 2018, Scott went to Plaintiff's home in her capacity as a social worker to conduct a welfare check on KC. (FAC ¶ 12.) During her visit, Scott verbally harassed and attacked Plaintiff without cause, "aggressively approached" Plaintiff's wife, and "screamed threats" at them, including to remove KC from their home. (*Id.* ¶¶ 16–17.)

The day after Scott's visit, Plaintiff and her wife went to the Department of Family Services and made a formal complaint against Scott with her unidentified John/Jane Doe supervisor. (*Id.* ¶ 21.) Presumably, shortly after becoming aware of the formal complaint against her, Scott gave a false report to the NYSP and the County DA's Office accusing Plaintiff of committing several

---

[1]  NYCPL § 170.55 provides for an "adjournment in contemplation of dismissal": "an informal mechanism" disposing of relatively minor charges on a "nonmerits adjudicatory basis" provided that the defendant, the prosecutor, and the court agree to keep the charges in "a state of suspense for a period of six months, during which the [defendant's] habitual behavior pattern can be tested by time." *Hollender v. Trump Village Co-op., Inc.*, 58 N.Y.2d 420, 424 (N.Y. 1983). "[O]nce the six-month period is at an end, absent any untoward event, the case will be dismissed as a matter of course unless, on application of the prosecutor, the court is convinced 'that dismissal of the accusatory instrument would not be in the furtherance of justice.'" *Id.* (quoting NYCPL § 170.55). A dismissal under the statute does not "connote either a conviction or . . . an admission of guilt." *Id.* In short, "[t]he overall effect of a consummated [adjournment in contemplation of dismissal] is . . . to treat the charge as though it never had been brought." *Id.* at 425.

crimes. (*Id.* ¶ 22.) Scott gave this false report in retaliation against Plaintiff and to cover up "her illegal actions." (*Id.* ¶ 23.)

On September 13, 2018, based on Scott's false accusations, Trooper Roser and unidentified John/Jane Doe NYSP troopers went to Plaintiff's home and arrested. (*Id.* ¶ 25.) During the arrest, Trooper Roser and the other NYSP troopers placed the handcuffs on Plaintiff too tight, and they verbally abused her and harassed her without justification. (*Id.* ¶ 26.) The County DA's Office, Trooper Roser, and the other NYSP troopers then prosecuted Plaintiff for two years based on Scott's false accusations until the case was dismissed under NYCPL § 170.55. (*Id.* ¶ 28.)

## II. Procedural Background

On September 7, 2021, Plaintiff commenced the instant action after filing a complaint. (Compl., ECF No. 1.) On September 15, 2021, Plaintiff filed her FAC. (FAC, ECF No. 7.) On October 7, 2021, the County sought leave to file its motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 12 & 13.) On January 21, Trooper Roser also sought leave to file her motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 22 & 23.) On February 17, 2022, Plaintiff and the County filed their respective briefing on the County's instant motion: the County filed its notice of motion (ECF No. 25), memorandum in support ("County Motion," ECF No. 26), and reply ("County Reply," ECF No. 28); and Plaintiff filed her response in opposition ("Response in Opposition to County," ECF No. 29).

On February 28, 2022, Scott also sought leave to file her motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 30 & 31.) On April 12, 2022, Plaintiff and Trooper Roser filed their respective briefing on Trooper Roser's instant motion: Trooper Roser filed her notice of motion (ECF No. 32), memorandum in support ("Roser Motion," ECF No. 33), and reply ("Roser Reply," ECF No. 34); and Plaintiff filed her response in opposition

("Response in Opposition to Roser," ECF No. 35). On May 13, 2022, Plaintiff and Scott filed their respective briefing on Scott's instant motion: Scott filed her notice of motion (ECF No. 36), an accompanying declaration with exhibits (Rodd Decl., ECF No. 37), memorandum in support ("Scott Motion," ECF No. 38), and reply ("Scott Reply," ECF No. 40); and Plaintiff filed her response in opposition ("Response in Opposition to Scott," ECF No. 42).

## LEGAL STANDARD

### I.      Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

### II.   42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights

elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

By her FAC, Plaintiff asserts a total of 8 causes of action against all defendants under § 1983 for: (1) unreasonable and excessive force (FAC ¶¶ 52–60); (2) malicious prosecution (*id.* ¶¶ 61–66); (3) false arrest (*id.* ¶¶ 67–71); (4) false imprisonment (*id.* ¶¶ 72–77); (5) abuse of process (*id.* ¶¶ 78–84); (6) substantive due process (*id.* ¶¶ 85–89); (7) procedural due process (*id.* ¶¶ 90–94); and (8) failure to intervene (*id.* ¶¶ 95–99). Plaintiff also asserts a final cause of action for municipal liability under *Monell* solely against the County. (*Id.* ¶¶ 100–05.)

As a threshold matter, the Court dismisses all of the non-*Monell* claims against the County, as well as against Scott and her unidentified supervisor in their official capacities as County employees, because a municipality may not be liable under § 1983 "by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." (quotation marks and citation omitted)).

Further, the Court also dismisses all claims asserted against Trooper Roser and the unidentified NYSP troopers in their official capacities for lack of subject matter jurisdiction. That

is because as these claims are effectively against the State of New York, then such claims are barred by the Eleventh Amendment and sovereign immunity. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." (citations omitted)); *Le Grand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983) ("By virtue of the [E]leventh [A]mendment, the State of New York is immune from a suit for damages under 42 U.S.C. § 1983 without its consent, . . . which it has not given." (cleaned up)).

Moreover, while the Court recognizes that the unidentified defendants are yet to be served and to make an appearance, a review of the FAC reveals that Plaintiff employed "group pleading" and asserted substantially the same allegations against the unidentified defendants that she did against their identified co-defendants: Scott and Trooper Roser. (*See, e.g.*, FAC ¶ 54 (excessive force) ("Defendants . . . Roser and John/Jane Doe Officers #1-10 subjected Plaintiff . . . to excessive, unnecessary and unreasonable force, without provocation, privilege, consent, excuse[,] and/or justification."); *id.* ¶ 63 (malicious prosecution) ("The individual defendants lacked probable cause to believe the above-stated malicious prosecution could succeed."); *id.* ¶ 69 (false arrest) ("The Defendants through Defendants . . . Rosner and John/Jane Doe Officers #1-10 arrested Plaintiff . . . without probable  cause, or other wrongful acts . . . ."); *id.* ¶ 74 (false imprisonment) ("The false arrest of Plaintiff . . . resulted in false imprisonment, as she was detained, in custody, and incarcerated for a considerable period of time by Defendants . . . Roser and John/Jane Doe Officers #1-10."); *id.* ¶ 82 (abuse of process) ("As a consequence of Defendants' wrongful actions, negligent behavior and violation of Plaintiff['s] constitutional rights, Plaintiff . . . was falsely accused of crimes which she did not commit, Plaintiff . . .  was put

in jeopardy of going to jail, and . . . KC was in jeopardy of being removed from their home."); *id.* ¶ 88 (substantive due process) ("Each of the individually named defendants involved in such illegal actions knew or had reason to know, upon information and belief, that such violations were occurring, and had a realistic opportunity, upon information and belief, to intervene to prevent such violations from occurring."); *id.* ¶ 91 (procedural due process) ("The Defendants . . . caused the arrest of Plaintiff . . . without an arrest warrant and without probable cause, and under additional circumstances where a warrantless arrest, even if there was probable cause, would have been improper."); *id.* ¶ 97 (failure to intervene) ("Each of the defendants knew or had reason to know that said acts were wrongful and illegal, and yet each of said defendants failed to intervene.").) Hence, given that (a) Defendants' arguments in the instant motions against the identified defendants are equally applicable to Plaintiff's allegations against the unidentified ones, and (b) Plaintiff has been given notice and an opportunity to be heard on such arguments, the Court will *sua sponte* determine below whether dismissal of the remaining claims against the unidentified defendants in their individual capacities is warranted. *See Citadel Mgt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000) (citing *Wachtler v. Cnty. of Herkimer,* 35 F.3d 77, 82 (2d Cir. 1994)).

And finally, after reviewing Plaintiff's opposition papers to each of Defendants' respective motions, the Court notes that Plaintiff failed to address some of the arguments raised by Defendants. For example, despite Trooper Roser raising arguments against each of the eight causes of action Plaintiff asserts against her, Plaintiff only addressed the one regarding the excessive force claim against her. (*Compare* Resp. in Opp'n to Roser at 6–8, *with* Roser Mot. at 11–20.) Similarly, despite Scott raising arguments against each of the eight causes of action Plaintiff asserts against her, Plaintiff failed to address those regarding the causes of action for excessive force and failure

to intervene. (*Compare* Resp. in Opp'n to Scott at 8–19, *with* Scott Mot. at 9–19.) As such, the Court deems Plaintiff's claims against Scott and her unidentified supervisor for excessive force and failure to intervene, as well all her claims against Trooper Roser and unidentified NYSP troopers, with the exception of the one for excessive force, abandoned and dismisses them accordingly. *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013).

With all that in mind, by their respective motions, Defendants seek to dismiss all of the remaining claims against them for failure to state a claim. For its part, the County argues that Plaintiff fails to sufficiently allege a *Monell* claim as the FAC contains boilerplate allegations and no facts establishing that the County has an unconstitutional custom or policy. (County Mot. at 9–12; County Reply at 5–7.)[2] For her part, Trooper Roser argues that Plaintiff's excessive force claim against her fails as a matter of law for failure to allege any injury that is beyond *de minimis*. (Roser Mot. at 10; Roser Reply at 6–7.)

And for her part, Scott first argues that Plaintiff's claims for malicious prosecution, false arrest, and false imprisonment must be dismissed because she fails to sufficiently plead the lack of probable cause. She then argues that Plaintiff's claim for abuse of process must be dismissed because she fails to sufficiently allege that the charges brought against her based on Scott's allegedly false accusations had a collateral goal. Lastly, Scott argues that Plaintiff's claims for substantive and procedural due process must be dismissed because these claims are duplicative of her claims for malicious prosecution, false arrest, and false imprisonment. (Scott Mot. at 11–19; Scott Reply at 5–12.)

The Court addresses Defendants' arguments in that order.

---

[2] The County also argues in the alternative that Plaintiff's claims are barred by the statute of limitations. (County Mot. at 14.) But the County limits its discussion to a single paragraph with scant legal argument and citations to binding authorities. Hence, the Court declines to address this issue as it is inadequately briefed

I.      **Plaintiff's *Monell* Claims Against the County**

In its motion, the County argues that Plaintiff's *Monell* claims against it fails because she fails to sufficiently allege that it had an unconstitutional official policy or custom. (County Mot. at 10–12; County Reply at 5–7.) The Court agrees.

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Svcs. of City of New York*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009).

The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity itself commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

In determining municipal liability under *Monell*, courts in the Second Circuit apply a two-step test. First, a plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted), *cert. denied*, 480 U.S. 916 (1987). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

After establishing the existence of a municipal policy or custom, a plaintiff must then establish a causal link between it and the alleged constitutional injury. *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a

constitutional violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity.").

Here, the Court is of the view that Plaintiff's boilerplate allegations in her FAC are nothing "more than labels and conclusions" constituting "a formulaic recitation of a cause of action" that is insufficient to plead a *Monell* claim against the County. *Twombly*, 550 U.S. at 555. For example, Plaintiff alleges that

> [p]rior to September 13, 2018, and since, [the] County has permitted and tolerated a pattern and practice of unjustified, unreasonable, and illegal false arrests, false imprisonments, excessive uses of force, malicious prosecutions, abuses of process, and procedural and substantive due process violations by and through social workers and police officers of [the] County. Although such actions were improper and illegal, the county employees involved were not seriously prosecuted, disciplined, or subjected to restraint and such incidents were in fact covered up with official claims that these actions were justified and proper. As a result, [the] County employees were caused and encouraged to believe that individuals' rights could be violated, and that such violations would in fact be permitted by [the] County.

(FAC ¶ 101.) She also alleges that

> [the] County has failed to investigate and/or address these constitutional violations, and these policies and customs and practices despite receiving prior complaints and/or reports, even though [the] County knows that training and supervision would help to correct such wrongful actions and prevent violations of individuals' civil rights. Rather, [the] County has allowed and condoned such policies, practices, and customs, knowing full well that actions pursuant to such policies, practices, and customs, are likely to and do violate individuals' civil rights.

(*Id.* ¶ 103.) Plaintiff asserts allegations elsewhere in the FAC that are substantially the same as the ones quoted above. (*See, e.g.*, *id.* ¶¶ 35–46.)

11

Yet, nowhere in her FAC does Plaintiff allege sufficient factual content for the Court to even be able to draw reasonable inferences in her favor. *See Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) ("[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details."). Her response in opposition the County's motion fares no better.

To begin, Plaintiff fails to allege any facts supporting the existence of an official policy or custom. For instance, despite her broad allegations above, Plaintiff fails to name even a single specific prior instance that could plausibly suggest that County employees have repeatedly engaged in unconstitutional conduct such that this "pattern" constitutes an official policy or custom. *See Econ. Opportunity Comm'n v. Cnty. of Nassau, Inc.*, 47 F. Supp. 2d 353, 370 (E.D.N.Y. 1999) (dismissing municipal liability claim where plaintiffs "d[id] not proffer any facts in support of the conclusory allegation that the defendants' conduct amounts to a custom or policy, or that this custom or policy caused the plaintiffs injuries.").

Nor does Plaintiff allege a single prior instance of misconduct that is factually similar to help establish the County failed to supervise or discipline its employees such that it tacitly approved or acquiesced in the face of such misconduct. Nor does Plaintiff allege the specific type of training that the County lacked and which purportedly caused her injuries. *See, e.g.*, *Simms v. City of New York*, No. 10–CV–3420 (NGG)(RML), 2011 WL 4543051, at *2 (E.D.N.Y. Sept. 28, 2011) ("[T]o survive a motion to dismiss, the complaint must plainly identify the type of training the government employees lacked and include 'enough factual material . . . for the court to reasonably infer that the police misconduct' was not the result of 'the individual acts of the arresting officers.'"), *aff'd*, 480 F. App'x 627 (2d Cir. 2012).

Similarly, Plaintiff's boilerplate allegations of causation are insufficient to overcome a motion to dismiss. *See Pettiford v. City of Yonkers*, 14 CIV. 6271 (JCM), 2021 WL 2556172, at *10 (S.D.N.Y. June 21, 2021); *see also Tieman*, 2015 WL 1379652, at *14 (declining to accept as true conclusory accusations unsupported by facts that would permit the court to infer that city policies caused the alleged constitutional violation). For example, nowhere does Plaintiff plead any facts about which County policymakers were on notice, how they received notice, and how exactly the County "tacitly approved" of any unconstitutional official policy despite having notice of the same. As the Second Circuit has previously noted, a plaintiff's allegations on causation must be premised on more than "on . . . the mere fact that the misconduct occurred in the first place." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004); *accord Pettiford*, 2021 WL 2556172, at *10.

And insofar as Plaintiff states in her opposition that "more than 30 complaints [have been] filed since 2002" against the County and its employees for purportedly similar misconduct, and also attaches a federal complaint from another case as a supporting exhibit, Plaintiff is inappropriately "shor[ing] up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that plaintiff could not amend her complaint through a legal memorandum filed in opposition to a motion to dismiss). Hence, the Court must reject Plaintiff's new allegations in her opposition.

Accordingly, the Court dismisses all of Plaintiff's *Monell* claims against the County.

II.   **Plaintiff's Excessive Force Claim Against Trooper Roser and the other Unidentified NYSP Troopers**

Trooper Roser next argues that Plaintiff's excessive force claim against her fails as a matter of law for failure to allege an injury beyond *de minimis.* (Roser Mot. at 10; Roser Reply at 6–7.) The Court agrees.

The Fourth Amendment's reasonableness standard requires "balancing . . . 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Dancy v. McGinley*, 843 F.3d 93, 116 (2d. Cir. 2016) (quoting *Graham*, 490 U.S. at 395–96). A police officer's use of force is excessive "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Factors relevant to this inquiry include:

> the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001)).

"[I]t is . . . well established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [plaintiff's] constitutional rights." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 797 (S.D.N.Y. 2021) (quoting *Mesa v. City of New York*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) (cleaned up)). In other words, *de minimis* injury, such as general pain, inflammation, and swelling, is insufficient to sustain an excessive force claim in this context. *See McGarrell v. Arias*, No. 18 Civ. 2273, 2019 WL 2528370, at *4 (S.D.N.Y. March 1, 2019) (collecting cases).

14

Particularly relevant here, it is well established that "routine handcuffing . . . absent something more, cannot constitute a cognizable excessive force claim." *Jouthe v. City of New York*, No. 05 Civ. 1374, 2009 WL 701110, at \*14 (E.D.N.Y. Mar. 10, 2009). Although handcuffing that causes injury may constitute excessive force, "[t]here is a consensus among District Courts in this Circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort and bruising." *Holling v. City of New York*, No. 10 Civ. 1650, 2014 WL 836950, at \*9 (S.D.N.Y. Mar. 3, 2014); *accord Codrington v. City of New York*, No. 12 Civ. 1650, 2015 WL 893567, at \*10 (E.D.N.Y. Mar. 2, 2015) ("'[T]ight handcuffing' generally does not give rise to an excessive force claim absent a showing of lasting injury.").

Here, Plaintiff fails to allege any specific injury resulting from the alleged tight handcuffing by Trooper Roser and the other unidentified NYSP troopers, let alone any injury that is beyond *de minimis*. Instead, Plaintiff merely alleges the handcuffs were "too tight" causing unspecified "physical injuries" and general "pain and suffering." (FAC, ¶¶ 26, 53.) These bare and unspecific "injuries" are plainly insufficient to give rise to a cognizable excessive force claim. *See McGarrell*, 2019 WL 2528370 at \*4; *see also Holling*, 2014 WL 836950 at \*9.

Similarly, insofar as Plaintiff alleges that Trooper Roser and the other unidentified NYSP troopers used excessive force through verbal abuse and harassment, such allegations are meritless for, once again, failure to allege any resulting injury that was beyond *de minimis*. "Verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Shabazz v. Pico*, 994 F. Supp 460, 474 (S.D.N.Y. 1998); *see also Beal v. City of New York*, 1994 WL 163954, at \*6 (S.D.N.Y. Apr. 22, 1994), *aff'd*, 89 F.3d 826 (2d Cir. 1995).

Accordingly, the Court dismisses Plaintiff's excessive force claims against Trooper Roser and the unidentified NYSP troopers.

### III. Plaintiff's Remaining Claims Against Scott and Her Unidentified Supervisor

Scott next argues that Plaintiff's claims for malicious prosecution, false arrest, and false imprisonment must be dismissed because she fails to sufficiently plead lack of probable cause. She also argues that Plaintiff's claim for abuse of process must be dismissed because she fails to sufficiently allege that the charges brought against her based on Scott's allegedly false accusations had a collateral goal. And lastly, Scott argues that Plaintiff's claims for substantive and procedural due process must be dismissed because these claims are duplicative of her claims for malicious prosecution, false arrest, and false imprisonment. (Scott Mot. at 11–19; Scott Reply at 5–12.) The Court agrees.

#### A. *Malicious prosecution, false arrest, and false imprisonment*

Notably, Plaintiff asserts her claims for malicious prosecution, false arrest, and false imprisonment against Scott, a social worker who is neither the arresting officer nor the charging prosecutor. Notwithstanding, the Second Circuit has previously held that an individual may be held liable for an arrest by the police if she "affirmatively procured or instigated the plaintiff's arrest." *King v. Crossland Sav. Bank*, 111 F.3d 251, 256 (2d Cir. 1997). The same applies with respect to claims for malicious prosecution. *See Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) ("Where a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution." (citing *Babi–Ali v. City of New York*, 979 F. Supp. 268, 276 (S.D.N.Y. 1997)).

To prevail on a claim for malicious prosecution under § 1983, a plaintiff must show that (1) the defendant commenced or continued a criminal proceeding against the plaintiff, (2) the

16

defendant commenced or continued the action maliciously, (3) there was no probable cause for the proceeding, (4) the proceeding ended in the plaintiff's favor, and (5) he or she was subjected to a post-arraignment restraint sufficient to implicate the Fourth Amendment's protection against unlawful seizures. *See Hall v. Brown*, 489 F. Supp. 2d 166, 171 (N.D.N.Y. 2007) (citing *Marshall v. Sullivan*, 105 F.3d 47, 50 (2d Cir. 1996)).

Because "[f]alse arrest is considered a kind of false imprisonment, . . . the claims are analyzed in identical fashion. *See Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005) (citing *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995) (describing false arrest claim as type of false imprisonment claim and stating that claims are analyzed identically), *cert. denied,* 517 U.S. 1189 (1996); *accord Weyant v. Okst,* 101 F.3d 845, 853 (2d Cir. 1996)).

"To establish a claim for false arrest under . . . 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant*, 101 F.3d at 852). Unlike malicious prosecution, a claim for false arrest does not require a plaintiff to plead a lack of probable cause. *See Hall v. Brown*, 489 F. Supp. 2d 166, 173 (N.D.N.Y. 2007); *accord McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016).

Nonetheless, where an officer acts with probable cause in arresting a suspect, that probable cause stands as a complete defense to a claim for false arrest. *Weyant*, 101 F.3d at 852; *see also Singer*, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Probable cause exists if officers have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation omitted). "Probable cause does not require

17

absolute certainty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). Indeed, "some exculpatory evidence does not make an arrest illegal when the totality of evidence still establishes probable cause to believe that the suspect committed the crime." *Stansbury v. Wertman*, 721 F.3d 84, 94 (2d Cir. 2013).

Further, to defeat a false arrest claim, an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). As long as there was probable cause to arrest the plaintiff for *some* offense, a false arrest claim will fail. *See Jaegly*, 439 F.3d at 152. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Here, after reviewing Plaintiff's relevant allegations, the Court concludes that they are conclusory. In her FAC, Plaintiff merely alleges without more that (1) Scott made "false allegations" against her (FAC ¶¶ 22–25); (2) the NYSP and County DA's Office prosecuted her for about two years (*id.* ¶ 28); and (3) she "did not violate any law, regulation or administrative code; commit any criminal act; or act in an unlawful manner prior to being arrested" (*id.* ¶ 30). Nowhere does Plaintiff provide any facts whatsoever regarding Scott's alleged false allegations. For example, it is unclear what was the criminal conduct of which Scott falsely accused her and whether the alleged false accusations involved a single incident or a series of events spanning across particular time period. Further, nowhere does Plaintiff the nature of the criminal charges the County DA's Office brought against her.

Put another way, Plaintiff's relevant allegations are insufficient to plead the claims at issue because they fail to "give [Scott] fair notice" of the grounds upon which the relevant claims rest. *Twombly*, 550 U.S. at 555; *see also Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) (noting that the purpose of Rule 8(a) "is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial."). Such conclusion is supported by the fact that probable cause stands as a complete defense to a claim for false arrest and false imprisonment, *see Weyant*, 101 F.3d at 852, and that Plaintiff must plead the lack of probable cause for her malicious prosecution, *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) ("An element of any malicious prosecution claim is the absence of probable cause").

Similarly, insofar as Plaintiff asserts the same relevant claims against Scott's unidentified supervisor, the Court concludes that such claims also fail. Indeed, given that Plaintiff specifically alleges that Scott's unidentified supervisor "knew or should have known" that Scott "intentionally fabricated that Plaintiff committed any crime" (FAC ¶¶ 33–34), then in the absence of the information discussed above, Plaintiff also failed to "give . . . fair notice" to Scott's unidentified supervisor about the grounds upon which her relevant claims rest. *Twombly*, 550 U.S. at 555; *Strunk*, 68 F. App'x at 235.

Accordingly, the Court dismisses Plaintiff's claims for malicious prosecution, false arrest, and false imprisonment against Scott and her unidentified supervisor.

B.    *Abuse of Process*

To establish a viable § 1983 abuse of process claim, a plaintiff must establish that a defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a

collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (citation omitted).

"In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action." *Id.* at 77 (citing *Dean v. Kochendorfer*, 237 N.Y. 384 (1924) (distinguishing between improper motive and improper purpose and concluding that improper purpose is necessary to make out an abuse-of-process claim—improper motive is not enough)). "A malicious motive alone . . . does not give rise to a cause of action for abuse of process." *Id.* (citations omitted).

But here, Plaintiff alleges exactly that which is insufficient to state a claim for abuse of process: "Scott made these false allegations to cover up her misconduct, and to retaliate for Plaintiff . . . complaint against [her.]" (FAC ¶ 23); *Savino*, 331 F.3d at 77 (to state a claim for abuse of process, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."); *accord Wetzel v. Town of Orangetown*, 2010 WL 743039, at *5 (S.D.N.Y. 2010) (retaliatory motive is insufficient to state claim against defendant who employs regularly issued legal process to compel performance or forbearance of some act).

Moreover, nowhere does the FAC contain any facts from which the Court could reasonably infer in her favor what alleged misconduct and "illegal actions" Scott was trying to cover up through the false report she gave. *See Crews v. County of Nassau*, 2007 WL 4591325, *12 (E.D.N.Y. 2007) ("Because plaintiffs have merely alleged that defendants were motivated by their desire to cover up their misdeeds, but not  that defendants had a purpose other than to prosecute [plaintiff], the abuse of process claim fails."); *see also Brewster v. Nassau Cnty.,* 349 F. Supp. 2d

540, 550 (E.D.N.Y. 2004) (dismissing plaintiff's abuse of process claim for failure to allege or provide evidence of collateral purpose outside legitimate ends of process). The Court is also of the view that Plaintiff's relevant claim against Scott's unidentified supervisor fails for similar reasons.

Accordingly, the Court dismisses Plaintiff's claims for abuse of process against Scott and her unidentified supervisor.

### C.     *Substantive Due Process and Procedural Due Process*

"To state a substantive due process claim, a plaintiff must allege that: (1) the complained-of state action compromised a constitutionally-protected liberty or property right, and (2) the state action that deprived him of that interest was oppressive or arbitrary." *Rother v. NYS Dep't of Corrections and Community Supervision*, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013) (citation omitted). "For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)).

"To establish a procedural due process claim, a plaintiff must prove (1) he has a property or liberty interest protected by the Constitution[] and (2) that government deprived him of that interest without due process.[]" *Grasson v. Bd. of Educ. of Town of Orange*, 24 F. Supp. 3d 136, 146 (D. Conn. 2014) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Narumanchi v. Bd. of Trs. of Connecticut State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988)).

Here, however, Plaintiff's substantive due process and procedural due process claims are all predicated upon the exact same factual basis as her claims for excessive force, malicious prosecution, false arrest, and false imprisonment. (*See* FAC ¶¶ 85–94.) For that reason, Plaintiff fails to state her substantive due process and procedural due process claims because they are merely duplicative of her other claims that are explicitly protected under other constitutional

sources. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (cleaned up)); *accord Rother*, 970 F. Supp. 2d at 100 (dismissing plaintiff's substantive due process claims as duplicative); *see also Levantino v. Skala*, 56 F. Supp. 3d 191, 203 (E.D.N.Y. 2014) (collecting cases) (dismissing plaintiff's procedural due process claims predicated upon same factual basis as false arrest and false imprisonment claims).

Accordingly, the Court dismisses Plaintiff's substantive due process and procedural due process claims against Scott and Scott's unidentified supervisor. In sum, the Court dismisses all claims asserted in Plaintiff's FAC.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS all of Defendants' motions to dismiss (ECF Nos. 25, 32, and 36) and DISMISSES Plaintiff's First Amended Complaint without prejudice. The Court further GRANTS Plaintiff leave to file a Second Amended Complaint. If Plaintiff chooses to do so, she shall have until October 24, 2022, to file a Second Amended Complaint. Defendants are then directed to answer or otherwise respond by November 21, 2022. If Plaintiff fails to file a Second Amended Complaint within the time allowed, and she cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Opinion and Order may be deemed dismissed with prejudice.

The Clerk of Court is directed to terminate the motions at ECF Nos. 25, 32, and 36.

Dated:  September 22, 2022
        White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

22